CARLE FOUNDATION *et al.*, Plaintiffs-Appellants, v. ILLINOIS HEALTH FACILITIES PLANNING BOARD *et al.*, Defendants-Appellees.

First District (5th Division)  No. 1—98—3996

Opinion filed August 13, 1999.

Priscilla P. Weaver, Diane J. Romza-Kutz, and Jeffrey S. Kinsler, all of Mayer, Brown & Platt, of Chicago, for appellants.

James E. Ryan, Attorney General, of Chicago (Karen J. Dimond, Assistant Attorney General, of counsel), for appellees Illinois Health Facilities Planning Board, Pamela Taylor, Illinois Department of Public Health, and John R. Lumpkin.

Michael W. Rathsack and Thomas J. Pliura, both of Chicago, for appellees Danville Healthcare L.L.C., Mazonvest Facilities Company, and Thomas J. Pliura.

John T. Bomher and Mark D. Deaton, both of Naperville, for *amicus curiae*.

JUSTICE THEIS delivered the opinion of the court:

On April 2, 1998, the Illinois Health Facilities Planning Board (Planning Board) granted Danville HealthCare L.L.C. (Danville HealthCare) a certificate of need to construct an ambulatory surgical treatment center. Plaintiffs sought judicial review of the Planning Board's decision in the circuit court, claiming it was against the manifest weight of the evidence to grant the certificate of need. The circuit court concluded that plaintiffs did not have standing. On appeal, plaintiffs contend that they have standing and that the Planning Board's approval of the certificate of need was against the manifest weight of the evidence. For the following reasons, we affirm.

In 1997, defendant Danville HealthCare applied for a certificate of need to open an ambulatory surgical treatment center (ASTC) in Danville, Vermilion County, Illinois. Danville HealthCare proposed to build an ASTC that would offer a variety of surgical services such as orthopaedic, cardiovascular, gynecological, and otolaryngological services. Plaintiffs operate health care facilities in Champaign, Illinois, which is approximately 45 minutes away from Danville. Both Danville HealthCare and plaintiffs are located in health service area (HSA) IV.[1]

As part of the application process, a public hearing was held to invite comments in favor of and against Danville HealthCare's

---

[1]Illinois is divided into 11 HSAs for the purpose of evaluating the need for particular health care services in each area. *Dimensions Medical Center, Ltd. v. Advanced Ambulatory Surgical Center, Inc.*, 305 Ill. App. 3d 530, 533 (1999); 77 Ill. Adm. Code § 1110.220 (1996).

proposed plan. Those who attended the public hearing were entitled to voice their opinions. Plaintiffs did not participate in this hearing.

On April 2, 1998, the Planning Board held its hearing to consider Danville HealthCare's application. The Illinois Department of Public Health (Department), which had reviewed Danville HealthCare's application materials, submitted a report of its findings and testified at the hearing. A representative from the Department stated that Danville HealthCare failed to comply with approximately 15 of the "necessary criteria" set forth in the regulations and used in reviewing such applications. Danville HealthCare then gave a presentation of its proposal and answered questions from the Planning Board members where many, if not all, of the deficiencies alleged by the Department were addressed. Subsequently, the Planning Board granted the requested certificate of need.

Plaintiffs filed a complaint in the circuit court, contending that the Planning Board's decision to grant the certificate of need was against the manifest weight of the evidence because many of the criteria set forth in the regulations were not met. The circuit court concluded that plaintiffs did not have standing to request judicial review of the administrative agency's decision. The circuit court went on to find that, in any event, the Planning Board's decision was not against the manifest weight of the evidence. This appeal followed.

Before examining the merits, we first must address exactly what is at issue in this appeal. Plaintiffs are not challenging the alleged denial of a certificate of need for which they had applied in order to open their own ASTC in Danville. In fact, the record contains no evidence that plaintiffs' application was denied or, if it was denied, the reasons for that denial. Regardless, this information is irrelevant because the outcome of plaintiffs' application process is not on appeal here.

What is on appeal is plaintiffs' claim that the Planning Board should not have granted Danville HealthCare a certificate of need. That is, plaintiffs are contesting action relating to another entity, and not action taken against themselves. Whether plaintiffs have standing is not so obvious in this situation and, therefore, it is critical that we analyze this important threshold requirement.

■ Fortunately, we have some guidance from prior cases to aid us in determining whether plaintiffs can survive a standing challenge. Judicial review of the Planning Board's action is provided in the Illinois Health Facilities Planning Act (Planning Act), which states, "[a]ny person who is adversely affected by a final decision of the State Board may have such decision judicially reviewed." 20 ILCS 3960/11 (West 1996). We have held that plaintiffs are adversely affected "if, within the administrative record, they are shown to be 'competing

health care facilities.' " *Dimensions Medical Center, Ltd. v. Suburban Endoscopy Center*, 298 Ill. App. 3d 93, 98, 697 N.E.2d 1231, 1235 (1998), quoting *Condell Hospital v. Health Facilities Planning Board*, 161 Ill. App. 3d 907, 933, 515 N.E.2d 750, 768 (1987). See also *Advanced Ambulatory*, 305 Ill. App. 3d at 534. In *Suburban Endoscopy* and *Advanced Ambulatory*, the plaintiffs were determined to be competing health care facilities because they performed the same or similar services as the applicant and established that patients would be drawn from the plaintiffs' facilities to the applicant's facility. *Advanced Ambulatory*, 305 Ill. App. 3d at 535; *Suburban Endoscopy*, 298 Ill. App. 3d at 95, 98-99.

■ Plaintiffs argue that they are adversely affected because they are competitors of Danville HealthCare. However, their citations to the administrative record contain no evidence to support such a claim. After examining the cited materials, we find that there is no evidence that plaintiffs perform the same or similar services Danville Health-Care intends to provide, or that Danville HealthCare will draw patients away from plaintiffs.

Some of plaintiffs' record citations refer to "Carle," but it is unclear whether these are references to plaintiffs or to Carle Clinic Association, which is an entity located in Danville that is unrelated to plaintiffs. Consequently, these materials have no value as to this issue.

Plaintiffs also point to statements of a doctor who spoke at the hearing as evidence that Danville HealthCare would target patients currently being referred to plaintiffs. We find that his statements regarding how many people from Vermilion County went to plaintiffs' facility last year tell us nothing about the type of services those patients were seeking or whether Danville HealthCare intended to target those individuals.

As evidence that plaintiffs and Danville HealthCare would perform the same or similar services, plaintiffs cited to two referral forms and a letter from defendant Dr. Pliura to plaintiffs. The referral forms list several medical facilities as well as plaintiffs, making it unclear which, if any, of the services provided by plaintiffs would be duplicated by Danville HealthCare or whether patients would be taken away from plaintiffs and sent to Danville HealthCare. The letter also is unavailing as it states that any impact Danville HealthCare would have on plaintiffs' facility would be "negligible."

Finally, plaintiffs claim the record shows that referrals currently being sent to plaintiffs will be sent to Danville HealthCare. Statements were made during the hearing that some doctors referring patients to Danville HealthCare also expressed that they would refer patients to the ASTC plaintiffs were proposing to open in Danville.

Whether patients would be referred to plaintiffs' proposed ASTC has no bearing on whether patients would be drawn away from plaintiffs' facility in Champaign. Similarly, Dr. L. Royce Larsen's letter confirming the number of referrals he would make to Danville HealthCare also says nothing about whether patients would be drawn from plaintiffs' facility to Danville HealthCare.

Plaintiffs' evidence consists mainly of off-hand remarks made during the administrative proceedings where their names may have been mentioned in passing. These snippets of information were not intended to show whether plaintiffs were competitors, but were references only to whether a "need" existed in the area. "Need" actually presupposes the absence of competition. Plaintiffs' evidence is vague and speculative at best and insufficient to establish their status as competitors.

Even if the record demonstrated that plaintiffs and Danville HealthCare provided the same or similar services, they are not competing health care facilities because they are located too far apart from each other. Although plaintiffs and Danville HealthCare are located within the same HSA, such a fact is not dispositive of the issue of competition. "Rather, the actual distance between plaintiff and defendant must be considered." *Advanced Ambulatory*, 305 Ill. App. 3d at 535. Recently, this court held:

> "Board rules make clear that health care facilities more than 30 minutes apart from each other are generally too far away to be considered as serving the same population. See 77 Ill. Adm. Code § 1110.230 (a)(2) (1996) (the applicant must document that the location for its ASTC will not create a maldistribution of services; when determining if such a maldistribution exists, the Board looks at the utilization rates of other facilities 'within 30 minutes travel time under normal driving conditions of the proposed [facility]')." *Advanced Ambulatory*, 305 Ill. App. 3d at 535.

The record establishes that Danville HealthCare's intended geographical service area is a 30-minute radius around the proposed ASTC site. However, plaintiffs and Danville HealthCare's proposed site are more than 30 minutes apart from each other. Under the Planning Board's rules, plaintiffs are not a competing health facility. Consequently, they lack standing to challenge the Board's grant of the certificate of need to Danville HealthCare for this reason as well.

Because plaintiffs cannot establish standing, it is unnecessary to address whether the Planning Board's decision was against the manifest weight of the evidence. See *Suburban Endoscopy*, 298 Ill. App. 3d at 99, 697 N.E.2d at 1235. However, we note that we would find the Planning Board's decision was supported by the manifest weight of the evidence. It is untrue, as plaintiffs argue, that only the

Department's evidence was before the Planning Board. At the hearing, defendants had the opportunity to, and did, present additional information to rebut the Department's deficient findings. For example, prior to the hearing, the Department determined that of Dr. Larsen's 1,450 proposed patient referrals, 458 might not be referable to Danville HealthCare. However, at the hearing, Danville HealthCare presented a letter from Dr. Larsen confirming that he could refer 1,450 patients to Danville HealthCare. This one piece of information affected several of the Department's negative findings. Danville HealthCare presented other information in response to the Department's findings as well.

After reviewing the record from the hearing, we find that Danville HealthCare presented sufficient information to rebut the alleged deficiencies. Therefore, the Planning Board's granting of the certificate of need was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN and GREIMAN, JJ., concur.